JAMES B. MCCABE *v.* BALTIMORE TRUST COMPANY, a corporation of the State of Delaware, and HAROLD W. HORSEY.

(*September* 16, 1935.)

HARRINGTON and RODNEY, J. J., sitting.

*James R. Morford* (of Marvel, Morford, Ward & Logan) for plaintiff.

*Aaron Finger* (of Richards, Layton & Finger) for defendants.

Superior Court for New Castle County, Action of Trover, No. 141, May Term, 1934.

HARRINGTON, J., in delivering the opinion of the court sustaining the defendant's demurrer to the plaintiff's declaration, among other things, said:

■ The meaning of a contract and the intent of the parties with respect thereto is usually a question of law to be determined from its language, and allegations of what the parties intended cannot overcome that rule. See *Carroll v. Cohen*, 5 *Boyce* 233, 91 *A*. 1001; *Moline Jewelry Co. v. Otwell, Lowe & Tull*, 2 *Boyce* 129, 78 *A*. 300.

■ Where the terms of a contract are ambiguous and its meaning is, therefore, doubtful, there are cases where the conduct of the parties showing their interpretation of it has some bearing on their intent. *Wright v. Scotton*, 13 *Del. Ch.* 402, 121 *A.* 69, 31 *A. L. R.* 1162. That rule only applies, however, in doubtful cases where the intent of the parties cannot be fairly ascertained from the contract itself, and has no application here.

The plaintiff contends that even if the Baltimore Trust Company, by assignment of October 26, 1931, was on or about November 3, 1931, the owner of the notes and bonds deposited by the plaintiff with Mr. Horsey, as State Bank Commissioner, that it appears from the allegations of the declaration already referred to that that company had subsequently lost all of its rights therein by abandonment or waiver.

He further contends that by such acts title was again vested in him, and that both of the defendants are, therefore, guilty of converting his property.

■ Even, independent of rights acquired by contract, or of any facts justifying the application of the rule of estoppel, there doubtless, are some cases where the legal or equitable owner of personal property may absolutely relinquish his rights thereto by an intentional abandonment to the public (*Eads v. Brazelton*, 22 *Ark.* 499, 79 *Am. Dec.* 88; *Kansas, etc., R. R. Co. v. Wagand*, 134 *Ala.* 388, 32 *So.* 744; *Wilmore Coal Co. v. Brown* (*C. C.*), 147 *F.* 931; 15

C. J. 5, *etc.*, 12; 1 *Bouv. Law Dict., Rawl's 3d Ed.*, 3), by waiver (*Jones v. Savin*, 6 *Boyce* 68, 96 *A.* 756; *Id.*, 6 *Boyce* 180, 97 *A.* 591; *Hirzel et al. v. Silker*, 4 *W. W. Harr.* [34 *Del.*] 588, 156 *A.* 360; *O'Neill v. Cooles*, 3 *W. W. Harr.* [33 *Del.*] 541, 140 *A.* 648), or in some manner other than by absolute gift acompanied by delivery.

When relied on, the rights of the plaintiff as the legal owner, based on any such theories, must, however, be clearly and definitely stated, as well as proved, and not left to argument or inference. See *Deputy & Co. v. Hastings*, 2 *W. W. Harr.* (32 *Del.*) 345, 123 *A.* 33.

As we have already stated, it is alleged that the Baltimore Trust Company accepted the schedule inclosed in the Horsey letter as limiting and defining the assets and property transferred to it by the October contract. Even if that allegation could, under any circumstances, constitute the statement of a technical abandonment of title, there is nothing to show that such title again vested in the plaintiff.

It is true that it is alleged that until December 1, 1933, the securities involved in this action were in the custody of Mr. Horsey for the benefit of creditors and depositors in The Selbyville Bank, and though the Baltimore Trust Company was then the real owner of them, for the same purpose, the plaintiff still had certain possible rights in them, or in their proceeds under the October assignment, though he was not a party to it.

A waiver is usually defined as the intentional relinquishment of a known right, but unlike abandonment it operates to the benefit of another person having a right, or a possible right or interest in the same property, whether by contract, or otherwise. *Jones v. Savin*, 6 *Boyce* 68, 96 *A.* 756; *Id.*, 6 *Boyce* 180, 97 *A.* 591; *Hirzel et al. v. Silker*, 4 *W. W. Harr.* (34 *Del.*) 588, 156 *A.* 360.

■ Applying the familiar rule that every inference is against the pleader, we have already said that the letter of Mr. Horsey (which was attached to the declaration) is inconsistent with the alleged intent with which it was sent; but that intent has no necessary bearing on the intent of the Baltimore Trust Company to waive property rights previously acquired by it when such property had not been delivered.

The allegation that the schedule inclosed in the Horsey letter was accepted by the Baltimore Trust Company, as defining the assets transferred to it, though by a previous assignment, may not be inconsistent with the language of that letter; but if any such waiver was alleged, it apparently was of about November 3, 1931, the date of the Horsey letter, and it is not alleged that depositors and creditors had then been paid.